UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:22-CR-49-REW-HAI-1 |
| v. | ) | |
| | ) | |
| KORDELL L. TRAVIS, | ) | ORDER |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court following Defendant Kordell L. Travis's objection to the Recommended Disposition of United States Magistrate Judge Hanly A. Ingram. *See* DE 155 (Recommended Disposition); 156 (Objection). The United States responded. *See* DE 158. For the reasons that follow, the Court **OVERRULES** Defendant's objection, **ADOPTS** Judge Ingram's Recommended Disposition, and **FINDS** Travis competent to proceed.

**I.   Background**

Travis is charged with multiple counts of methamphetamine trafficking, in violation of 21 U.S.C. §§ 841(a)(1) and/or 846. *See* DE 1 (Indictment). On April 26, 2023, immediately after a change in counsel, Travis moved for a competency examination, alleging that "he has been seeing and hearing things." DE 103 at 2. Judge Ingram conducted a hearing on May 2, 2023 and denied the motion without prejudice. *See* DE 105 (Minute Entry). The following month, Travis filed a renewed motion for a competency examination. *See* DE 107. Judge Ingram conducted another hearing, *see* DE 117 (Minute Entry), and granted the motion, *see* DE 118 (Order).

Travis was transported to FCI Englewood, where he remained from June 27, 2023 to October 20, 2023. DE 123; 152. At Englewood, Dr. Jeremiah Dwyer, a forensic psychologist

1

employed by the Bureau of Prisons, evaluated Travis and ultimately generated a report. *See* DE 139 (Sealed Psychiatric Report and CV). After Dr. Dwyer's Report was filed and made available to the parties, Judge Ingram conducted a final competency hearing. *See* DE 154 (Minute Entry). At the outset, the parties disputed burden allocation. *See* Final Competency Hearing, 10/30/2023 at 2:12-6:27. Judge Ingram reserved ruling on the issue until after the hearing.[1] *See id.* at 7:15-7:26.

The only proof offered at the final hearing was Dr. Dwyer's Report and his accompanying remote testimony. *See* DE 154. Dr. Dwyer testified that he met with Travis on October 4th and October 10th, for approximately sixty to seventy-five minutes per session. *See* Final Competency Hearing, 10/30/2023 at 11:16-11:20, 11:45-11:50. To evaluate Travis, Dr. Dwyer: (1) asked Travis questions about his background; (2) attempted to assess Travis's functioning using three instruments (MMPI-3, M-FAST, and ILK); (3) collaborated with the three other mental health clinicians Travis met with while at Englewood; (4) spoke with health services staff and housing unit staff concerning Travis's mental function and presentation outside of formal evaluations; (5) listened to several of Travis's telephone calls placed while at Englewood; and (6) considered Travis's reported symptoms. *See id.* at 30:00-43:56.

Ultimately, Dr. Dwyer concluded that Travis was "malingering[,]" *i.e.*, exaggerating or feigning mental health symptoms as a strategy to cope with or manage a stressful situation, here, the criminal prosecution. DE 139 at 5; *see also* Final Competency Hearing, 10/30/2023 at 54:45-55:44. Though Dr. Dwyer did not diagnose Travis with any mental disease or defect, he cautioned that "this diagnosis does not preclude the presence of genuine mental health symptoms" and "[i]t

---

[1] At the hearing, Judge Ingram stated, and the parties agreed, that leaving the issue temporarily unresolved would not prejudice either side insofar as introduction of proof was concerned. *See* Final Competency Hearing, 10/30/2023 at 7:15-7:26.

2

is possible some type of genuine deficit or mental health issue is present." DE 139 at 9-10. Still, Dr. Dwyer opined that Travis is competent to proceed. *See id.* at 11. He did not diagnose Travis with any current mental health condition.

Following the hearing, Judge Ingram issued a Recommended Disposition. First, Judge Ingram determined, per the § 4241 text and related cases, that the defense faced the burden of showing by a preponderance of the evidence that Travis is incompetent. *See* DE 155 at 5. Judge Ingram, via thorough canvass, recommended that the undersigned find Travis competent to proceed, citing Dr. Dwyer's Report, Dr. Dwyer's testimony, and the Court's own observations. *See* DE 155. Judge Ingram explained that "there is no diagnosis[,]" and "no documented history before the Court whatsoever of any mental health issues." *Id.* at 9-10. He further reasoned that Travis previously filed a "well-crafted and articulate" *pro se* motion for new counsel, "spoke eloquently about various aspects of his case" during the related hearing, and there "is no evidence before the Court that something happened to Travis after the April hearing that so radically affected his ability to strategize, recall, and communicate." *Id.* at 9.

Judge Ingram advised the parties of the fourteen-day objection deadline, *see id.* at 10, and Travis timely objected, *see* DE 156. The United States responded in opposition. *See* DE 158.

## II.   Standard of Review

This Court reviews de novo those portions of the Recommended Disposition to which a party objects. 28 U.S.C. § 636(b)(1). But the Court is not required to "review . . . a magistrate [judge's] factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 106 S. Ct. 466, 472 (1985). Where the parties do not object to the magistrate judge's recommendation, they forfeit any right to review. *See* FED. R. CRIM P. 59 (limiting de novo review to "any objection" filed); *United States v. White*, 874 F.3d

3

490, 495 (6th Cir. 2017) ("When a party . . . fails to lodge a specific objection to a particular aspect of a magistrate judge's report and recommendation, we consider that issue forfeited on appeal."); *see also United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008) (noting that "[t]he law in this Circuit is clear" that a party who fails to object to a magistrate judge's recommendation forfeits his right to appeal its adoption). A proper objection, under Rule 59, invokes de novo review and various options, per (b)(3).

### III. Analysis

Here, Travis argues that (1) that Judge Ingram erred in assigning the burden of proof to the defendant, and (2) that the evidence cited demonstrates that Travis is not competent to stand trial. *See* DE 156 at 2-3.

The Court first considers which party bears the burden. Pursuant to 18 U.S.C. § 4241 which codified the Supreme Court's *Dusky* decision, a defendant is competent to stand trial if the defendant has "(1) a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding,' and (2) 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Dubrule*, 822 F.3d 866, 875 (6th Cir. 2016) (quoting *Dusky v. United States*, 80 S. Ct. 788, 789 (1960)). Accordingly, a defendant who "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 95 S. Ct. 896, 903 (1975).

The § 4241(d) formulation strongly suggests that Congress assigned the burden to the defense, or at least to the party advocating against competency, by phrasing the hearing result as turning on whether the "court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent[.]" 18

U.S.C. § 4241(d). Indeed, the Supreme Court has, in dicta, suggested that "Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence." *Cooper v. Oklahoma*, 116 S. Ct. 1373, 1380 (1996) (citing 18 U.S.C. § 4241). But the prior year, the Sixth Circuit, in dicta from a table decision, suggested the opposite: "The government must demonstrate by a preponderance of the evidence that defendant is competent to stand trial." *United States v. Chapple*, 47 F.3d 1170, at *2 (6th Cir. Jan. 6, 1995) (table) (citing 18 U.S.C. § 4241(d)). There remains disagreement on the burden allocation. *Compare United States v. Salley*, 246 F. Supp. 2d 970, 976 (N.D. Ill. 2003) (placing burden on United States), *with United States v. Simmon*s, 993 F. Supp. 168, 170 (W.D.N.Y. 1998) ("The burden to prove a lack of competence is on the defendant.").

Here, Travis primarily relies on *Chapple*. *See* DE 156 at 2. While the Sixth Circuit placed the burden on the United States in that case, it did so without explanation or statutory analysis. *See Chapple*, 47 F.3d at *2. And the Court does not view *Chapple* as resolving the question because the Sixth Circuit has subsequently stated, on numerous occasions, that "[i]t is undisputed that 'this Circuit has never explicitly stated who bears the burden of proving a defendant's [pretrial] competency.'" *United States v. Thomas*, 2022 WL 17330661, at *2 (6th Cir. Nov. 19, 2022) (second alteration in original) (quoting *Dubrule*, 822 F.3d at 876 n.3). Indeed, this Court, following the text, has historically placed the burden of persuasion on the movant. *See United States v. Lowe*, 6:18-CR-57-REW-HAI-14, 2022 WL 738550, at *3 (E.D. Ky. Jan. 26, 2022); *United States v. Myrick*, No. 6:17-CR-70-CHB-HAI-2, 2021 WL 2302735, at *4 (E.D. Ky. May 13, 2021). In short, placing the burden on Travis is consistent with the statutory framework and the Court's prior practice, and the Court sees no reason to deviate from that position in this instance. To find a defendant incompetent, the elements of incompetency must appear "by a

5

preponderance of the evidence." Evidence of incompetency *below* that mark, or even equivalent proof, would require a finding of competency; logic thus puts the burden on the party advocating against competency.

In any event, this uncertainty is material only in the "narrow class" of cases where proof is "in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent." *Medina v. California*, 112 S. Ct. 2572, 2579 (1992). That is not the case here. Outside of Travis's advocacy, there is no evidence that he suffers from a mental disease or defect. Dr. Dwyer found no proof of that, and there are no records indicating that Travis previously suffered or presently suffers from a mental disease or defect. And there is significant reason to doubt Travis's claims. Discussed more thoroughly below, Travis's own actions before this Court and at Englewood contradict his articulation and behavior in the formal evaluation setting. Thus, the Court **OVERRULES** the burden objection.

Travis also argues that the evidence cited demonstrates by a preponderance of the evidence that he is not competent to stand trial. *See* DE 156 at 3. Mental incompetence is a "high bar to clear," regardless of which party bears the burden. *United States v. Hood*, 827 F. App'x 524, 529 (6th Cir. 2020) (quoting *United States v. Miller*, 531 F.3d 340, 350 (6th Cir. 2008) (internal citations omitted)). An intellectual disability does not automatically render the defendant incompetent to stand trial. *See Adams v. Haeberlin*, 404 F. App'x 11, 14 (6th Cir. 2010). Instead, incompetence requires that the defendant exhibit a "deep [] breakdown in cognition" so that he lacks the ability to understand the proceedings against him and participate in his own defense. *Hood*, 827 F. App'x at 529 (quoting *United States v. Coleman*, 871 F.3d 470, 477 (6th Cir. 2017)).

Competency is determined by balancing several factors, including the defendant's past behavior and opinions of experts. *See Drope*, 95 S. Ct. at 908; *Dubrule*, 822 F.3d at 876. Each

competency determination should be "tailored to the individualized circumstances of a particular defendant." *Hood*, 827 F. App'x at 529 (quoting *Indiana v. Edwards*, 128 S. Ct. 2379, 2380 (2008)). No factor "should be viewed in isolation." *Williams v. Bordenkircher*, 696 F.2d 464, 466 n.1 (6th Cir. 1983). That said, expert evaluation plays an important role in resolving competency questions. *Hood*, 827 F. App'x at 526. When determining what weight to give a reviewing expert's opinion, the Court should consider the length of the evaluation period, the thoroughness of the examiner's observations, and the expert's credentials and experience in evaluating trial competency. *United States v. Franklin*, No. 7:19-MJ-2-REW-EBA, 2020 WL 748181, at *5 (E.D. Ky. Feb. 14, 2020).

As an initial point, Dr. Dwyer is well-credentialed. He earned an M.A. in applied psychology and a Ph.D. in clinical psychology. *See* DE 139-1 at 1 (Dwyer CV). A forensic psychologist at Englewood since 2007, he estimated conducting approximately 650 competency evaluations at the BOP. *See* Final Competency Hearing, 10/30/2023 at 25:40-25:55. The percentages of determination he reported show that Dwyer is hardly a competency rubber stamp.

Dr. Dwyer grounded his malingering determination on two lengthy evaluation sessions with Travis, independent observations of Travis's behavior, and his own training and experience. In the evaluation sessions, Travis "declined to participate in many aspects[.]" DE 139 at 1. Dr. Dwyer explained that Travis's lack of responsiveness in the sessions was indicative of feigning symptoms rather than a genuine cognitive or mental deficit. *See id.* at 11. For example, he cited Travis's non-responsiveness to the ILK test. Final Competency Hearing, 10/30/2023 at 32:40-33:28, 46:17-46:43. Dr. Dwyer explained that this is a simple true or false test so "easy" that it is not truly used to address competency. *See id.* Thus, Travis's behavior indicated fear of the outcome of that test rather than a lack of understanding. *See id.*

7

Dr. Dwyer also explained that Travis's reported symptoms are atypical in severity and breadth. He reviewed Travis's legal history, observing that those documents "do not contain any information consistent with a near-total lack of legal knowledge" that Travis now presents. DE 139 at 9. Indeed, as Judge Ingram observed, prior to filing the competency motion, Travis clearly communicated with the Court, demonstrated "strategic and nuanced thinking[,]" and was "able to recall and describe specific details about past discussions with counsel." DE 155 at 9. Post-competency motion, in court, Travis—similar to his behavior with Dr. Dwyer—"has been completely silent, refusing to respond to questions and sitting motionless with his eyes either closed or staring at nothing[.]" *Id.* at 8. Dr. Dwyer explained that the severity and sudden onset of Travis's reported symptoms is "atypical" absent an explanatory interim incident, such as head trauma. DE 139 at 7-8. Here, there is "no valid incident to account for the onset of [Travis's] memory deficits, or reported symptoms of psychosis." *Id.* at 11. Dr. Dwyer also opined that the symptoms themselves are unusual, reasoning that "Travis reported experiencing integrated auditory and visual hallucinations for extended periods of time, but without any reported or observed disorganization of speech or behavior which would be expected when experiencing such symptoms." *Id.* at 8.

Finally, Dr. Dwyer observed that the way Travis behaved in formal evaluations significantly differed from the way he behaved around other inmates, medical staff, and on telephone calls. *See id.* at 35:15-37:35; DE 139 at 4-5. As the Report explained:

> During the evaluation period, Mr. Travis presented in an inconsistent manner. That is, during formal contacts with mental health staff, Mr. Travis reported severe impairment due to symptoms of psychosis and low cognitive functioning. As noted elsewhere in the report, Mr. Travis reported an inability to participate in most assessment procedures, and he generally provided very limited answers to even basic questions. Conversely, in the housing unit he was observed on several occasions to engage in conduct that suggested higher levels of functioning. For example, officers reported observing Mr. Travis playing cards with other

8

>defendants, and Health-Services staff denied any issues discussing medical issues/history with Mr. Travis.

DE 139 at 4. For further example:

> [S]everal [of Travis's] telephone calls were monitored, and presentation during those calls was much more functional than Mr. Travis's presentation during formal evaluation sessions. For example, towards the end of his evaluation, Mr. Travis was seen for a session, and he reported little recall in response to most questions. Later that same day, he placed a call to Louisville, Kentucky. During the call, he discussed his potential, estimated leave date, the process for leaving, a return to a prior facility where he had access to tablets, and completion of a tort claim for a lost tablet prior to his arrival at this facility. This was in stark contrast to Mr. Travis's presentation during the evaluation session earlier that day. None of the reviewed calls revealed any indications of cognitive impairment, or psychological symptoms.

*Id.* at 5.

Simply put, Travis showed one version of himself in the context of formal evaluation and quite another in off-script social interactions and candid or pre-exam settings. The shearing inconsistencies—the clueless and noncommunicative Travis on one hand but the card-playing, phone using, motion-writing Travis on the other—strongly confirmed a view of Travis as manipulating his presentation to serve a strategy. Travis's argument heavily focuses on the fact that Dr. Dwyer's report and testimony conceded that "[i]t is possible some type of genuine deficit or mental health issue is present." DE 139 at 10. First, the fact that Travis *may* (and this is, in theory) have an unspecified mental health issue is insufficient to clear the "high bar" of proving incompetence. *See Hood*, 827 F. App'x at 529 (internal quotation marks omitted). Even if Dr. Dwyer had formally diagnosed Travis with a mental illness, that does automatically render Travis incompetent; Travis must also show that he lacks the ability to understand the proceedings and participate in his defense. *See Adams*, 404 F. App'x at 14; *Hood*, 827 F. App'x at 529. He has not advanced any evidence of an illness or competency deficit. The logical potential that a feigning defendant could also have a mental defect makes sense, but there is no proof of that here.

9

Further, Dr. Dwyer made clear that he included the caveat that Travis could have a genuine deficit or mental health issue not because he observed evidence of one, but because *he lacked information to rule the possibility of one out.* Indeed, Dr. Dwyer opined that "there is no information suggesting the presence of a significant mental health diagnosis at this time." DE 139 at 9, 11. Dr. Dwyer had no records concerning Travis's mental health history, and Travis did not offer historical information concerning his health. *See* Final Competency Hearing, 10/30/2023 at 22:15-22:53. Further, Travis declined to participate in the three tests that Dr. Dwyer attempted to perform, preventing any potential assessment related to those results. *See id.* at 10/30/2023 at 32:24-32:34. In short, Travis's "efforts to exaggerate and/or feign mental health symptoms" resulted in the absence of testing and historical information, which hampered Dr. Dwyer from definitively ruling out possible mental illness. This proof truism (something could be there but there is no proof of it) borders on being directly opposed to an actual determination of incompetency.

In sum, Dr. Dwyer based his findings on attempted tests, personal interviews with Travis, independent observations of Travis's behavior, and his nearly seventeen years of training and experience as a BOP forensic psychologist. He found no evidence of a mental or cognitive defect that would render Travis incompetent. The Court finds the opinion credible and well-supported.

Lastly, Judge Ingram relied on Dr. Dwyer along with his own observed conduct. Judge Ingram himself conducted a detailed hearing (under the *Iles/Benitez* rubric), prompted by Travis's *pro se* motion. He witnessed a Defendant in full charge of his faculties and with detailed mastery over his case and legal circumstances. *See Iles/Benitez* Hearing, 4/13/2023 at 6:18-7:02, 16:36-17:54, 22:05-22:28 (recalling prior discussions with counsel), 8:53-10:12 (detailing concerns regarding Probation's criminal history point calculation), 13:30-14:19 (affirming understanding of

plea negotiation process). For Travis to suddenly and purportedly become incompetent raised significant questions that Judge Ingram grappled with and properly resolved. His conclusion, that Travis indeed is competent, is the only one supported by evidence in this record.

Accordingly, the Court **OVERRULES** Travis's objections, *see* DE 156, **ADOPTS** the Recommended Disposition, *see* DE 155, and **FINDS** Travis competent to face further proceedings in this matter, including trial.

The Court previously continued trial generally, "pending the resolution of competency as an issue." DE 124 at 1. Accordingly, the Court **SCHEDULES** trial for **April 24, 2023** at **8:30 a.m.** (counsel and defendant shall appear by 8:00 a.m.) in London, Kentucky. All pretrial deadlines reset to the new date.

This the 2nd day of January, 2024.

Signed By:
*Robert E. Wier*   REW
United States District Judge